# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

### Holding a Criminal Term

### Grand Jury Sworn in on May 25, 2021

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 21-cr- |
| v. | GRAND JURY ORIGINAL |
| STEPHEN K. BANNON, | VIOLATION: |
| Defendant. | Count 1: 2 U.S.C. § 192 (Contempt of Congress—Testimony) |
| | Count 2: 2 U.S.C. § 192 (Contempt of Congress—Papers) |

## INDICTMENT

The Grand Jury charges that, at all times material to this Indictment, on or about the dates and at the approximate times stated below:

## BACKGROUND

### The Select Committee

1. On June 30, 2021, the U.S. House of Representatives (the "House") adopted House Resolution 503, which established the Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Select Committee").

2. According to House Resolution 503, the Select Committee's purpose was, in part:

> To investigate and report upon the facts, circumstances, and causes relating to the January 6, 2021, domestic terrorist attack upon the United States Capitol Complex (hereafter referred to as the "domestic terrorist attack on the Capitol") and relating to the interference with the peaceful transfer of power, including facts and causes relating to the preparedness and response of the United States Capitol Police and other Federal, State, and local law enforcement agencies in the National Capital Region and other instrumentalities of government, as well as the influencing factors

that fomented such an attack on American representative democracy while engaged in a constitutional process.

3. One of the Select Committee's functions, as set forth in House Resolution 503, was to:

> investigate the facts, circumstances, and causes relating to the domestic terrorist attack on the Capitol, including facts and circumstances relating to . . . (B) influencing factors that contributed to the domestic terrorist attack on the Capitol and how technology, including online platforms, financing, and malign foreign influence operations and campaigns may have factored into the motivation, organization, and execution of the domestic terrorist attack on the Capitol; and (C) other entities of the public and private sector as determined relevant by the Select Committee for such investigation.

4. House Resolution 503 provided that the Select Committee would issue a final report to the House, which would include recommendations for corrective measures, including possible "changes in law, policy, procedures, rules, or regulations that could be taken" to prevent future similar acts and "to strengthen the security and resilience of the United States and American democratic institutions against violence, domestic terrorism, and domestic violent extremism."

5. To accomplish the Select Committee's purposes and fulfill its functions, House Resolution 503, with reference to the rules of the House, authorized the Select Committee, through the Chair of the Select Committee ("Select Committee Chair"), "to require, by subpoena or otherwise, the attendance and testimony of such witnesses and the production of such books, records, correspondence, memoranda, papers, and documents as it considers necessary."

**The Select Committee Subpoenas Stephen K. Bannon**

6. STEPHEN K. BANNON was a private citizen. For approximately seven months in 2017, more than three years before the events of January 6, 2021, BANNON was employed in the Executive Branch of the U.S. Government as the Chief Strategist and Counselor to the

President. After departing the White House in 2017, BANNON did not work again in any Executive Branch or federal government position.

7. On September 23, 2021, the Select Committee issued a subpoena to BANNON. The cover letter to the subpoena stated:

> The Select Committee has reason to believe that you have information relevant to understanding important activities that led to and informed the events at the Capitol on January 6, 2021. For example, you have been identified as present at the Willard Hotel on January 5, 2021, during an effort to persuade Members of Congress to block the certification of the election the next day, and in relation to other activities on January 6. . . . Moreover, you are quoted as stating, on January 5, 2021, that "[a]ll hell is going to break loose tomorrow." Accordingly, the Select Committee seeks both documents and your deposition testimony regarding these and multiple other matters that are within the scope of the Select Committee's inquiry.

8. As described further below, the subpoena required BANNON to appear and produce documents to the Select Committee on October 7, 2021, and to appear for a deposition before the Select Committee on October 14, 2021.

9. On September 24, 2021, BANNON accepted service of the subpoena through his attorney.

*The Documents Commanded by the Subpoena*

10. The Select Committee's subpoena commanded BANNON to appear on October 7, 2021, at 10:00 a.m., at an office in the U.S. Capitol Complex and "produce the things identified on the attached schedule touching matters of inquiry committed to [the Select Committee]" and "not to depart without leave of [the Select Committee]."

11. The schedule attached to the subpoena identified 17 categories of "documents and communications" that BANNON was required to produce relevant to the Select Committee's authorized investigation of the January 6th attack on the U.S. Capitol.

12. The subpoena also included instructions for compliance with the document demand, titled, "DOCUMENT PRODUCTION DEFINITIONS AND INSTRUCTIONS." The instructions directed that, if BANNON could not comply fully with the subpoena by the return date, he should comply "to the extent possible by that date" and provide an explanation and date certain for full compliance; that, if BANNON withheld any documents and communications, he should provide a detailed log of which records were withheld and why; and that, upon completion of BANNON's response to the subpoena, he should provide a written certification that a diligent search had been completed and all responsive documents had been produced.

*The Deposition Commanded by the Subpoena*

13. The subpoena also commanded that BANNON appear on October 14, 2021, at 10:00 a.m., at an office in the U.S. Capitol Complex and "testify at a deposition touching matters of inquiry committed to [the Select Committee]" and "not to depart without leave of [the Select Committee]."

14. The subpoena included a copy of the House's "Regulations for the Use of Deposition Authority," which provided, in part, that during a deposition:

> The witness may refuse to answer a question only to preserve a privilege. When the witness has refused to answer a question to preserve a privilege, members or staff may (i) proceed with the deposition, or (ii) either at that time or at a subsequent time, seek a ruling from the Chair either by telephone or otherwise. If the Chair overrules any such objection and thereby orders a witness to answer any question to which an objection was lodged, the witness shall be ordered to answer. . . . A deponent who refuses to answer a question after being directed to answer by the chair may be subject to sanction . . . .

### BANNON'S Refusal to Comply with the Subpoena

15. On October 7, 2021, by the 10:00 a.m. deadline, BANNON did not appear before the Select Committee, did not produce documents and communications, did not provide a log of withheld records, did not request an extension of time, and did not certify that he had conducted a diligent search for responsive records. In fact, BANNON had not communicated with the Select Committee in any way since accepting service of the subpoena on September 24, 2021.

16. Instead, that evening, at 5:05 p.m., seven hours after BANNON had defaulted on the production deadline, BANNON, through his attorney, transmitted a letter ("BANNON's October 7 Letter") to the Select Committee's Chief Counsel. BANNON's October 7 Letter asserted that BANNON would not comply with the subpoena because former President Donald J. Trump had claimed that the subpoena sought records and testimony potentially protected by executive and other privileges and had instructed BANNON, "to the fullest extent permitted by law," to "(a) where appropriate, invoke any immunities and privileges he may have from compelled testimony in response to the Subpoena; (b) not produce any documents concerning privileged material in response to the Subpoena; and (c) not provide any testimony concerning privileged material in response to the Subpoena."

17. The next day, on October 8, 2021, the Select Committee Chair responded to BANNON in writing, rejected BANNON's reasons for non-compliance with the subpoena, and directed BANNON to comply. The Select Committee Chair stated, in part:

    a. That the instruction from former President Trump appeared "limited to requesting that Mr. Bannon not disclose privileged information" and that it was thus inappropriate not to comply with any of the subpoena's requirements;

5

    b.    That former President Trump's stated "intention to assert those executive privileges" did not provide a legal basis for non-compliance;

    c.    That "virtually all the documents and testimony sought by the Subpoena concern Mr. Bannon's actions as a private citizen and involve a broad range of subjects that are not covered by executive privilege";

    d.    That former President Trump had not made any privilege assertion to the Select Committee;

    e.    That BANNON was still obligated to provide documents and a privilege log for any withheld records;

    f.    That the Select Committee expected BANNON to appear for a deposition as commanded by the subpoena, and that "[i]f there are specific questions at that deposition that you believe raise privilege issues, Mr. Bannon should state them at that time for the deposition record for the Select Committee's consideration"; and,

    g.    That if BANNON failed to respond to the subpoena, the Select Committee would view it as "willful non-compliance" that "would force the Select Committee to consider invoking the contempt of Congress procedures in 2 U.S.C. §§ 192, 194—which could result in a referral from the House to the Department of Justice for criminal charges."

18.    At 5:19 p.m. on October 13, 2021, the evening before BANNON was required to appear before the Select Committee for a deposition and five days after receiving the Select Committee Chair's October 8 letter, BANNON, through his attorney, transmitted another letter to the Select Committee Chair ("BANNON's October 13 Letter"). BANNON's October 13 Letter

announced: "Until such time as you reach an agreement with President Trump or receive a court ruling as to the extent, scope and application of the executive privilege, in order to preserve the claim of executive and other privileges, Mr. Bannon will not be producing documents or testifying."

19. On October 14, 2021, at 10:00 a.m., BANNON did not appear before the Select Committee to testify.

20. The following day, on October 15, 2021, the Select Committee Chair sent a letter to BANNON, through his attorney, addressing BANNON's refusal to produce documents or a log of withheld records and his failure to appear for deposition testimony, as required by the subpoena. In the letter, the Select Committee Chair stated, in part:

　　a.　That BANNON had "now willfully failed to both produce a single document and to appear for his scheduled deposition. The Select Committee believes that this willful refusal to comply with the Subpoena constitutes a violation of federal law";

　　b.　That the Select Committee would meet on Tuesday, October 19, 2021, to consider initiating contempt of Congress procedures based on BANNON's refusal to comply in any way with the subpoena; and,

　　c.　That, if there were "any additional issues relating to [BANNON's] non-compliance with the Subpoena that have not been addressed," BANNON should "submit them in writing to the Select Committee by 6:00 p.m. E.S.T. on Monday, October 18, 2021 for the Select Committee's consideration in its deliberations."

21. By 6:00 p.m. on October 18, 2021, BANNON made no substantive submission for the Select Committee's deliberations, did not produce documents and communications, did not provide a log of withheld records, did not certify that he had conducted a diligent search for responsive records, did not appear for a deposition, and did not comply with the subpoena in any way.

## COUNT ONE
### (Contempt of Congress (Testimony)—2 U.S.C. § 192)

22. The allegations in paragraphs 1 through 21 are realleged and incorporated as if fully set forth herein.

23. On October 14, 2021, in the District of Columbia and elsewhere, the defendant,

**STEPHEN K. BANNON,**

having been summoned as a witness by the authority of the U.S. House of Representatives to give testimony upon a matter under inquiry before a committee of the House, did willfully make default—that is, in a matter under inquiry before the House Select Committee to Investigate the January 6th Attack on the United States Capitol, BANNON refused to appear to give testimony as required by a subpoena dated September 23, 2021, issued by the Select Committee and commanding BANNON to appear for a deposition at 10:00 a.m. on October 14, 2021.

(In violation of Title 2, United States Code, Section 192)

## COUNT TWO
## (Contempt of Congress (Papers)—2 U.S.C. § 192)

24. The allegations in paragraphs 1 through 21 are realleged and incorporated as if fully set forth herein.

25. By October 18, 2021, in the District of Columbia and elsewhere, the defendant,

**STEPHEN K. BANNON,**

having been summoned as a witness by the authority of the U.S. House of Representatives to produce papers upon a matter under inquiry before a committee of the House, did willfully make default—that is, in a matter under inquiry before the House Select Committee to Investigate the January 6th Attack on the United States Capitol, BANNON refused to produce documents and communications, provide a log of any withheld records, certify a diligent search for records, and comply in any way with a subpoena dated September 23, 2021, issued by the Select Committee and commanding BANNON to produce documents and communications as delineated therein.

(In violation of Title 2, United States Code, Section 192)

A TRUE BILL

FOREPERSON

*Matthew M. Graves* /jps
MATTHEW M. GRAVES
ATTORNEY FOR THE UNITED STATES
IN AND FOR THE DISTRICT OF COLUMBIA

9