IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:21-cr-670-CJN ) |
| STEPHEN K. BANNON, | ) ) |
| Defendant. | ) ) ) |

**REPLY IN SUPPORT OF MOTION TO REIMPOSE BAIL PENDING APPEAL OR
IMPOSE A PERIOD OF SUPERVISED RELEASE**

In his opening motion, Stephen K. Bannon demonstrated that significant events after this Court's June 6, 2024, bail decision warrant reimposing the Court's original grant of bail. ECF No. 201 ("Mot.") The government filed its opposition on September 12, 2024. *See* ECF No. 202 ("Opp."). The government affirmatively agrees that this Court is fully authorized to reconsider its prior decision, Opp. at 3, but the government nonetheless opposes relief. As demonstrated below, the Court should reject the government's arguments and grant the motion.

**I.      The Court Should Reimpose Bail Due to Changed Circumstances.**

Mr. Bannon's Motion relied on several intervening circumstances supporting reimposition of bail. In particular: (1) Judge Walker on the D.C. Circuit has since issued a dissent arguing that the interpretation of the *mens rea* element in 2 U.S.C. § 192 is a close issue that very well may warrant further appellate review by the *en banc* D.C. Circuit or Supreme Court; (2) enough time has now passed since the government filed its opposition to Mr. Bannon's *en banc* petition that the odds of a grant or a dissent from denial are nearly 100%, based on historical D.C. Circuit

1

practice; and (3) the government's subsequent briefing confirms the lack of Supreme Court cases supporting the government's interpretation of § 192. *See* Mot. at 2–9.

In response, the government never disputes that Judge Walker's June 20, 2024, dissent represents exactly the kind of statement this Court said on June 6 would have been significant to the bail determination: "Well, the one thing we know is that no one wrote separately to say, Hey, I'm bound by *Licavoli*, but I'm not so sure about it." June 6 Tr. at 18:14–16.

It should make no difference that Judge Walker voiced these concerns in his June 20 dissent rather than in a concurring opinion to the D.C. Circuit's May 10, 2024, panel decision. The important point is that a member of the original panel has now made clear that he has concerns about the D.C. Circuit's precedent on § 192 and that those concerns are sufficiently strong that the issue may warrant further review by an appellate court with authority to overrule that precedent.

The sole inquiry for this Court is whether the *mens rea* issue is "substantial," 18 U.S.C. § 3143(b)(1), meaning "a close question or one that very well could be decided the other way," *United States v. Perholtz*, 836 F.2d 554, 555–56 (D.C. Cir. 1988). And Judge Walker's dissent says precisely that. This alone should warrant reimposing bail.

The government contends it is unaware of authority "suggesting that one judge's dissent establishes a 'substantial question.'" Opp. at 4. But a "substantial" question includes one that is "debatable among jurists of reason," *United States v. Smith*, 793 F.2d 85, 89 (3d Cir. 1986), which is exactly what a dissent is: a debate among jurists of reason on the same panel. An issue on which a judge has dissented is thus a prototypical example of a substantial issue.[1]

---

[1] Further, the government's phrasing ("one judge's dissent") suggests that if *two* judges dissent from the denial of rehearing *en banc*, even the government may agree it is a substantial question.

The government contends that because Judge Walker was outvoted 2-1, the D.C. Circuit "effectively endorsed" this Court's decision rescinding bail. Opp. at 1, 4. But the government agrees with Mr. Bannon that this Court is not *bound* by that unpublished order. Mot. at 1–2 & n.1; Opp. at 3. And events after that 2-1 decision strongly undercut the government's reliance on it.

In particular, 44 days have now passed since the government filed its opposition to Mr. Bannon's petition for *en banc* rehearing on the *mens rea* issue, which means—based on a uniform historical D.C. Circuit practice that the government does not dispute, Mot. 4–6—that there is nearly a 100% chance that rehearing either will be granted or denied over dissents.

The government never disputes that either scenario would demonstrate the issue is "debatable among jurists of reason." *Smith*, 793 F.2d at 89. If rehearing is granted, it means a majority of active judges are concerned about the Court's precedent on § 192, and the panel judgment itself will be vacated. D.C. Cir. R. 35(f). If rehearing is denied over dissents, that would demonstrate significant disagreement among appellate jurists—the very existence of the dissent confirms such a disagreement. *See also United States v. Seefried*, No. 1:21-cr-00287, 2024 WL 1299371, at *3 (D.D.C. Mar. 26, 2024) (McFadden, J.) (holding that the grant of certiorari in *Fischer* "necessarily means that [defendant's] appeal, which involves the same issue, presents a 'substantial question of law'"). That is especially true given that dissents from denial are exceedingly rare at the D.C. Circuit—it has been over a year since one issued. Mot. at 6 n.5. Any issue on which a D.C. Circuit judge dissents from denial is almost necessarily a substantial one.

There is no need to wait for the grant or dissents to be formally issued when the undisputed statistics demonstrate one of those outcomes is nearly guaranteed, especially given that Mr. Bannon otherwise risks serving his entire sentence before the D.C. Circuit issues its decision on the *en banc* petition.

3

The government responds that maybe the D.C. Circuit is "simply dealing with a heavy workload after a summer recess." Opp. at 4. That is demonstrably wrong. *Just in the last two weeks*, the D.C. Circuit has promptly denied rehearing in two *other* cases where it had likewise called for a response to an *en banc* petition. The early-September 2024 denials were just 9 and 13 days after the responses to the *en banc* petitions had been filed, respectively. *See United States v. Kerrick*, No. 22-3014 (rehearing denied on September 3, 2024, which was 13 days after the response was filed); *Fed. Educ. Ass'n Stateside Region v. FLRA*, No. 22-1220 (rehearing denied on September 4, 2024, which was 9 days after the response was filed).

Clearly the D.C. Circuit is moving promptly right now to deny rehearing in other contemporaneous cases where the Court had called for a response to the *en banc* petition—but not in *this case*. The government's speculation that the D.C. Circuit is simply not paying attention to *en banc* petitions right now is thus incorrect.

The government also claims there is "no basis" for "read[ing] tea leaves" to suggest a grant or denial with dissents. Opp. at 4–5. It is difficult to imagine stronger historical evidence in favor of Mr. Bannon. He has cited two dozen cases over the last 20 months demonstrating the *uniform* practice of the D.C. Circuit after receiving a response to an *en banc* petition is to summarily deny it within 25 days *unless* the Court is going to grant it or deny it over separate opinions. The government never disputes that literally *every case* over a lengthy period of time follows that framework. The government's response to Mr. Bannon's petition has now been pending well beyond 25 days. It is thus the government—not Mr. Bannon—that is engaging in pure "speculation." Opp. at 4.

The government also contends that "the Supreme Court ha[s] effectively endorsed" this Court's prior decision rescinding bail. Opp. at 1. But that is also incorrect. The Supreme Court's

4

denial contained no rationale, and the Supreme Court has long made clear that its denial of discretionary relief "expresses no view as to the merits." *Yee v. City of Escondido*, 503 U.S. 519, 533 (1992).

Finally, Mr. Bannon's Motion also explained at length, based on the text of § 3143 and the Solicitor General's own filings, that he need not *separately* demonstrate that the D.C. Circuit or Supreme Court is more-likely-than-not to grant further review. Mot. at 7–8. The government's response consists only of a single, passing sentence that does not respond to *any* of Mr. Bannon's points or authorities. Opp. at 3. By failing to respond, the government has forfeited the point—and even more tellingly, effectively concedes that no meritorious response is possible. Accordingly, Mr. Bannon need not separately demonstrate that the *en banc* D.C. Circuit or Supreme Court is in fact likely to grant further review of that decision.

\* \* \*

Because Judge Walker has now expressed the kind of concerns this Court was looking for during its June 6, 2024, hearing, and because the undisputed statistics demonstrate there is nearly a 100% chance of a forthcoming grant of *en banc* or denial with a dissent, this Court should reimpose bail because it has become clear that the § 192 *mens rea* issue is one that is "debatable among jurists of reason." *Smith*, 793 F.2d at 89.

II.   **The Court Should Alternatively Impose Supervised Release.**

Mr. Bannon's Motion argued in the alternative that the Court should impose a brief period of supervised release, in conjunction with a brief sentence reduction if necessary, so that Mr. Bannon could take advantage of First Step Act earned-time credits available to nearly every other inmate serving time for non-violent offenses. Mot. at 9–11.

5

The government contends that Mr. Bannon must first ask the director of the Bureau of Prisons to seek a sentence reduction and then wait thirty days before Mr. Bannon can affirmatively seek this relief himself. Opp. at 6–7. But the government acknowledges that the exhaustion provision is not jurisdictional, and the D.C. Circuit has held that courts can "assume[] without deciding that [the defendant] properly exhausted … his grounds" for a sentence reduction and "thus address the merits of [his] contention." *United States v. Wilson*, 77 F.4th 837, 840–41 (D.C. Cir. 2023) (applying 18 U.S.C. § 3582(c)(1)(A)).

Doing so is especially "appropriate when the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *United States v. Foy*, No. 21-cr-00108, 2024 WL 3471247, at *3 (D.D.C. July 19, 2024) (waiving exhaustion under § 3582(c)(1)(A)). Having to wait thirty days for the BOP to refuse to seek such relief, as the government insists here, would force Mr. Bannon to wait for nearly the entirety of the remainder of his sentence—time that he could otherwise serve on supervised release under the First Step Act. Having to wait to exhaust BOP remedies would thus effectively preclude Mr. Bannon from being able to obtain any meaningful relief from this Court.

Further, "courts in this district have excused a defendant's failure to exhaust his administrative remedies under section 3582(c)(1)(A) on futility grounds … when it was highly unlikely that the BOP would consent to the defendant's release because the government had already expressed its opposition to the defendant's motion." *United States v. Greene*, 516 F. Supp. 3d 1, 21–22 (D.D.C. 2021) (K.B. Jackson, J.). Of course, that is precisely what the government has done here—it opposes Mr. Bannon's request on the merits. Opp. at 7–8. Indeed, the government has opposed Mr. Bannon obtaining any kind of relief and has even affirmatively

6

insisted on imprisoning him while his appeals are pending. Because there is no doubt that any request for release would be denied by the executive branch, Mr. Bannon also qualifies for the futility exception to exhaustion.

On the merits, the government does not dispute that numerous other courts have granted an imposition of supervised release to allow access to the First Step Act credits and that such relief qualifies as the necessary compelling reason for resentencing, given that nearly every other inmate with non-violent convictions is already eligible for such credits. Mot. at 9–10 (citing cases from across the country).

Instead, the government argues that *one* of those case is "not good law" because it predated the U.S. Sentencing Guidelines "Policy Statement 1B1.13" that took effect on November 1, 2023. Opp. at 8. But Mr. Bannon's Motion cited a case post-dating November 1, 2023, where the Court still held that "extraordinary and compelling circumstances warrant the modification that [the defendant] is seeking" because "he is unable to earn credit for participation in recidivism-reducing activities solely because [the court] did not sentence him to any supervised release." *United States v. Perez Sanchez*, 2024 WL 1069884, at *4 (E.D.N.Y. Mar. 12, 2024) (cited in Mot. at 10).

Notably, *Perez Sanchez* expressly held that "the policy statement in U.S.S.G. § 1B1.13" *supported* granting a term of supervised release to allow the defendant to be eligible for First Step Act credits, rejecting the government's argument (made here, too) that "the catchall provision of Section 1B1.13(b) [is] inapplicable" to requests for modification based on a desire to become eligible for First Step Act credits. *Id.* at *3, *5. Mr. Bannon cited *Perez Sanchez* in his Motion, yet tellingly the government never even acknowledges it, let alone responds to it.

Finally, the government contends that Peter Navarro, who was likewise convicted under § 192, was denied such relief by Judge Mehta, and that Mr. Bannon should thus receive the same

7

treatment. Opp. at 8. But in the *Navarro* case, the Court concluded that Mr. Navarro should not receive such treatment, in part, because *Mr. Bannon* had not already received it. Order, *United States v. Navarro*, No. 1:22-cr-200, ECF No. 177 (May 20, 2024). The government's argument is thus a Catch-22: neither defendant can obtain relief until the other defendant does so first. The Court should evaluate Mr. Bannon's case on its own merits, separate from what may have happened in *Navarro*.

## CONCLUSION

The Court should grant the Motion and reimpose bail pending appeal, or alternatively reduce Mr. Bannon's sentence (if necessary) and impose a period of supervised release.

September 13, 2024

By:  /s/ R. Trent McCotter

R. Trent McCotter
DC Bar # 1011329
BOYDEN GRAY PLLC
800 Connecticut Ave. NW, #900
Washington, DC 20006
(202) 706-5488
tmccotter@boydengray.com

M. Evan Corcoran
SILVERMAN THOMPSON SLUTKIN WHITE
400 East Pratt Street, Suite 900
Baltimore, MD 21202
(410) 385-2225
ecorcoran@silvermanthompson.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will serve all registered attorneys in this case.

 /s/ R. Trent McCotter
R. Trent McCotter